Good morning, your honors. My name is Peter Kogan. I am the counsel for appellant Charles Tellis. This is a case involving the Family Medical Leave Act. My client, Charles Tellis, was a mechanic employed at Alaska Airlines back in 2000. His wife was pregnant, and on July 3rd, there were continuing complications with her pregnancy. They both visited the family doctor because of severe abdominal pains that the wife was having. The doctor prescribed narcotics to Ms. Tellis, and that evening, Mr. Tellis went to work for the night shift between the 3rd and the 4th and told his supervisor, Mr. Gillick, that he was going to need to take a couple of weeks off because of complications with his wife's pregnancy. He asked Mr. Gillick if he had any FMLA forms for him to fill out. He did not. And he said Mr. Gillick told him to contact the company's health benefits office to get those, or corporate offices, he put it. The next day, they went back to the doctor and had further discussions with her. There was a discussion about whether labor should be induced, and the plan was to induce labor on the 12th. That day, on July 5th, the next day, Mr. Tellis called the health benefits office of the company, spoke with the health benefits specialist, Ms. Cheryl Pilcher, told her that he was needing to take time off because of complications with his wife's pregnancy, and asked that the forms be sent to him, and he gave them his home address. The next day, July 6th, their car had a catastrophic mechanical failure. The family discussed it and decided that he would go to Atlanta, where the family had another vehicle, and pick that vehicle up and bring it back. How does that have to do with care for the wife? Well, the two care for provisions of 116 talk about providing when a family member is unable to care for his or her own basic medical, hygienic or nutritional needs or safety or is unable to transport himself or herself to the doctor, et cetera. And that's exactly what that was. She was already at the party. She did she need transportation to the doctor? She was going to need transportation to the doctor during this period. So there were four days involved to get the car to go to Atlanta to get her transportation to the doctor? Somewhere between three to four days, yes. Well, he was going to be out. As a matter of fact, while he was gone, she had the baby. That's correct. So that wasn't much care for her. Well, not during those particular days. But, I mean, I would submit that it's not the province of the employer to micromanage what an employee does during a medical leave. I mean, we're going to look at what they do on each particular day. If you look at the Scamahorn case, during that case, the father was out for one month. He, in fact, went to work every day during that period of time. The son did some chores and drove him to medical appointments four or five times during that period of time. That's a whole month period. I mean, does the law say that the employer can micromanage exactly what someone does during the leave? The purpose of the trip was to get transportation. There's no question that he wasn't doing it for a care-related purpose. And I would submit that it should be an issue of fact. I have a hard time believing that. There would be all kinds of ways to get transportation to a doctor or a hospital, taxis, limousine services and so forth, not necessitating going further to Atlanta to pick up a car. It may have been a poor decision, but that's the decision that the family made at that time. I guess the question is, should a jury be allowed to decide whether that comes within the care for provisions of the statute, or is that something that must be decided by the court as a matter of law? And that's what you're called upon to decide here today. I think it's a very sympathetic case. I think for economic reasons he was trying to get things in order so they would have a car. But the other case you talked about, Scamhorn, there was some physical presence of, you know, there was a depression situation, so the person's presence was really caring. There was care given, and I'm wondering if we just interpret this in terms of, you know, plain English. It's hard to figure out how going to get a car is caring for. Just interpreting the statute on its face, do you have a view on that? My view is that a jury should be allowed to decide whether that, whether they feel it falls within the provisions of the statute. Well, you know, the district court had some suppositions that he went through about, well, what if they were to get the car a mile away? Right. What about 5 miles, 10 miles, 20 miles? Sure. Where do you say this is no longer caring for the wife? Maybe if you say, okay, honey, if you're okay, I'm going to go down to Bob's and get his car. Sure. And he's going for an hour or two and back. Right. Well, oftentimes I think when there's a family member who's ill, there's often other people who are also there. People take turns providing care. And he was taking a long period of time off. Are we to say that, you know, he should have waited until, I'm not sure what they're saying, but that he should have waited and done something else during that period of time? Certainly, it might not have been the best decision. I guess the question is, you know, does, is this, is the act broad enough to encompass this? I think the ---- Was the sister taking care of the wife? During the period of time when he was gone, yes. I mean, this is the difficulty, too, is that she needed care, obviously, and then she went unexpectedly quickly over to the hospital. So the sister takes care of her. Obviously, if the sister had gone to get the car, the husband had stayed home, we wouldn't have a problem. And I realize she didn't go get the car because she didn't have a free pass on Alaska Airlines. Right. But clearly the sister was caring for the wife during this period. Yeah, it may have been an unfortunate decision, but I don't think the employee had any idea that he was doing anything wrong, as Alaska seems to imply. You say he took a long time off. I didn't quite understand. Well, he told them he was going to be off for a couple of weeks. And that's ---- in fact, he tried to return after ---- he was trying to return after two weeks, but they ---- in fact, they terminated him before he returned. In fact, he was supposed to get 15 days from under the regulations, has 15 days to return the certification from the health care provider, and the employer terminated him before the end of that 15 days. As I understand the structure of it, he was given time off under the Medical Leave Act, Family Leave Act. Yes. And that was time off to care for the wife. That's right. When he went to Atlanta, then the company takes the position, well, he breached the leave that we gave him, and therefore it was appropriate for us to insist that this letter go into the file. Right. He says, no, it wasn't. You improperly sanctioned me, and therefore I can sue you for breach of the employment arrangement. Right. That's the way it works out. What he's saying is that he had the right to be restored to his former position with all the same terms and conditions of employment. The position is that by saying their offer was we will reinstate you, but we will put in this letter, warning letter in your file, and we're going to take away your right, which you normally would have, to file a grievance on it. If he had breached the release provision or the time leave provision that he got, then they could have put the letter in? Well, they could normally put a letter in, but he would normally have the right to file a grievance on it. They were saying you don't have that. They had the right to fire him. I guess that's the point, because he breached his leave of absence or whatever it is. They seem to me would have the right to put a letter in that he could not grieve. They could make that a condition of taking him back. If they had no obligation at all. Right. If they had the right, if they did not have an obligation to restore him to his position, then you're right. I mean, our position is that he didn't, that what he did was within the two care for provisions. Therefore, he had the right to be restored to his former position. Do you want to reserve your remaining time? Yes, I would. Thank you. Good morning. May it please the Court. My name is Jeff James. I represent Alaska Airlines, the appellee in this case. In our brief, we provided the Court with three bases to affirm the trial court's granting of summary judgment. First, that Mr. Tellis' trip to Atlanta was not conduct that was protected by the FMLA.  Second, that Mr. Tellis' trip to Atlanta was not conducted under the FMLA. And third, that Mr. Tellis' misrepresentations in order to get benefits disqualify him from coverage under the FMLA. Which one of those deals with the fact that he was given authority to be gone from work to care for the wife, but if he did not care for the wife, then he breached the leave agreement or whatever it is. Where does that come in there? The first ground is that Mr. Tellis' trip to Atlanta was not protected under the FMLA. Okay. That's fine. Which is the ground that Judge Zille relied on in affirming or in granting summary judgment. And that's the ground that I will focus on initially. And as time permits, I'll address the other grounds. On the evening of July 6, 2000, Mr. Tellis boarded a plane for Atlanta, leaving behind his pregnant wife, traveling 2,650 miles to Atlanta. He went to Atlanta to pick up a car. He was gone for four days. During the four days he was traveling back to Seattle, the record shows he talked to his wife or other family members at the house on his cell phone for approximately 27 minutes. Twenty-two instances of doing that? No. For a total of 27 minutes. In four days. Mr. Tellis was not home in Renton, Washington, caring for his wife between July 6 and July 9. He did not take her to the emergency room when she needed to go there. He did not take her to the hospital and was not with her at her side when she gave birth. In fact, he did not return to Seattle until the day after she had given birth. Now, presented with these undisputed facts, Judge Zille correctly ruled as a matter of law that Mr. Tellis was not caring for his wife within the meaning of the FMLA between July 6 and July 9 and granted summary judgment for Atlanta. He ruled that the act of going to Atlanta to pick up a car was not properly within the scope of the to-care-for regulations under the FMLA. What if he just made a mistake? He thought it was. They discussed it with the family. They thought this. They were not expecting that she'd have to go to the hospital right away. So he made a mistake. But they had agreed that would be a very good thing to get that so that she could be cared for and taken to the hospital and so forth. Made a mistake. Obviously, getting a car doesn't appear to be caring for the wife. But what if they thought it was? Well, Your Honor, they may have thought it was a mistake. But in order to remand this for trial on the grounds that the employee made a mistake, I believe would be opening up the FMLA to all sorts of defenses by employees as to why they were engaged in unauthorized conduct during their FMLA leave. Certainly, a four-day trip to Atlanta to pick up an automobile is not even within a reasonable interpretation of caring for one's spouse, and in my opinion. And so to grant that an employee Why would that be a jury question? Because as Judge Zille correctly ruled, as a matter of law, the statute and the implementing regulations talk about caring for someone in a manner that requires physical presence. The implementing regulation of 29 CFR 825.116 allows an employee in interpreting the to care for requirement, allows an employee to be authorized time off from work when the spouse with a serious health condition can't attend to her own medical needs or hygiene needs or safety needs or needs transportation. But built into the actual regulation is the common sense notion that you have to be there in order to care for them. Does that mean you have to be there 24 hours a day? I would submit, Your Honor, that there is some flexibility within the Act as this Court has acknowledged, I believe, in the Scamahorn decision. However, if you review the Scamahorn decision, the individual was in fact present during the day providing psychological comfort to his father. There are other decisions that the appellant has cited, I believe the Brunel decision, in which the plaintiff had been with the ill parents at the hospital trying to make a decision as to whether to have surgery, and there was observed drinking later in the evening. And in that situation, I believe it was the Sixth Circuit said this is in fact covered by the FMLA. Let me ask you about the dates. He actually was on vacation July, it was the Fourth of July weekend, post-weekend. He was supposed to be on vacation the 5th, 6th and 7th, correct? He submitted a vacation request. Now, before he can take vacation, he has to receive advance approval from his supervisor. He did not receive that approval, which is what started the events of the four, ultimately four managers trying to track down Mr. Tellis to find out where he was, why he was absent from work without approval. So he was supposed to be on vacation, and the next time he was supposed to come to work was on the 11th. Correct. But by the next time he was supposed to come to work, he was caring for his wife. He was home from Atlanta already, correct? Based on the record, that is correct. So just trying to figure this out, his problem really was being gone or not taking vacation approval, because he was in fact caring for his wife by the time he got back and by the time he was supposed to be at his job. Am I correct? I believe you're correct in reciting those dates. But if I can respond, Mr. Tellis's claim is under the FMLA, that he was denied rights under the FMLA, and his argument has been that this entire period is protected by the FMLA. The grant of summary judgment is based on the fact that four of those days were not, was not qualified, a qualified absence under the FMLA. And so the employer has the right to impose discipline, as you noted, Your Honor, a determination or a warning letter for violation of the company's work rules. If I could give that. So the whole, he's not claiming that they should have given him vacation, and therefore some period of this is under a disputed vacation as opposed to the FMLA. There has been no assertion made like that, Your Honor. And in fact, there was no assertion by Mr. Tellis at any time to the employer that in fact he needed vacation to go to Atlanta to get a car. Well, he didn't know that when he asked. He asked for his vacation for July 5th, 6th, and 7th. The car hadn't broken down yet, so he obviously couldn't have known that he needed vacation for that. Not at that time. That's correct. But he could have notified the company after the car broke down and said, I would, I need to go to Atlanta. And we wouldn't be here arguing this case, mostly. Would he have been entitled to vacation had he made the appropriate formal application? I mean, it's the 4th of July. That is awfully hard to say on the short notice, Your Honor. It would depend on scheduling and seniority and who else had vacation requests in. If I can, I would like to respond to your initial question as to how long, because I think this Court can establish a rule that would resolve not only this case, but future cases. And that is because we're talking about the FMLA and a statute that allows employees to take time off from work to care for either their own serious health condition or that of a spouse or another family member, there should be at least some time period during that work day in which care is provided. That's the whole reason to have time off from work. So in an instance where an individual is not providing any care whatsoever, either physical or psychological, during the course of a work day, the FMLA simply is not implicated. What if the person is not there physically, but they're dealing with a depressed relative and so they're literally on the phone five, six hours a day during the work day? Would that qualify as care, even though they weren't physically even in the same town? I believe physical presence is required to have time off from work under the FMLA, Your Honor. Certainly someone can use a phone or use e-mail during work and can make those kinds of arrangements. That doesn't require the person to be off work. What if, let me ask you this, what if you have a relative who lives in Seattle, but what you really need to do is move them into a facility and you need to go to Tacoma or Portland, so you spend five days down there trying to figure out which facility to put the person in so they can be cared for more appropriately than at home, would that qualify as caring for the individual? I would submit it wouldn't, Your Honor, that someone would have to use a different mechanism to obtain time off from work, either vacation or personal leave, but that is not something covered by the regulations under the FMLA. What is the effect of a disciplinary letter in the file? Your Honor, Alaska Airlines had an independent right to discipline Mr. Tellis for his violations of company work rules. He was granted all the leave that he was. That's not my question. I'm sorry. What is the effect of having a disciplinary letter in your file? There is a record that you have, in fact, violated a work rule. It could have no effect whatsoever after that point. If in the future there are other violations of work rules and the company is looking at progressive discipline, then it may look at that written record and see if you've engaged in similar conduct in formulating the appropriate discipline. That is the only impact. Thank you. Thank you, Your Honor. The Court's discussion of counsel. I'll give you one additional minute because we treaded on his time a little more than we anticipated. The Court's discussion with counsel, I think, shows that this is an issue that should be decided by a jury. Every case is going to present a little bit different situation. And, for example, the issue that you just raised about a family member going down to perhaps look for an appropriate facility for another family member, I think that the right to trial by jury demands that this type of question go to a jury. And I think that that's what should happen here. With regard to the disciplinary letter, I think it's – Excuse me. Yes. There's no dispute in the evidence as to the facts. It's only a question as to whether that was to care for the wife under the FMLA. Right. But there are times where a jury is called on to decide similar type of questions, as I pointed out in my brief. For example, whether there may be an undisputed set of facts in a Fair Labor Standards Act case, a jury would be called upon to decide whether those facts constituted an exercise of independent discretion. A jury is sometimes called on to decide things that are beyond just a simple fact. Did this happen or did this not happen? And I think that this is one of those type of situations where a jury should be allowed to decide. I'd like to follow up. Just as in the Skamhorn case. Sorry. I'd like to follow up on one of Judge McCune's questions. Is there no contention on the part of your client here that any part of that was vacation time? Well, under the regulations, as I understand it, under the contract, he had to use his vacation time for even during FMLA leave. You had to use up your vacation time first. I mean, the Act allows that, and their regulations also require that. So when you take FMLA leave, your paid time off gets used up during that period of time. So his claim is under the Act. Otherwise, it would be a question that would be before the arbitral board. This would be the court would be called upon to decide that. And then my other question is there was a settlement that seemed pretty reasonable to me. What was the concern about having a disciplinary letter in the file? I think his concern was that that could be used if something else happened to him that was the subject of disciplinary action, that that could be used to enhance that further discipline. Did this go ahead? So he'd rather take termination and risk that as opposed to having a disciplinary letter in his file that might later lead to termination. That's the decision that he made. I can't speak for why he was counseled. No, I wasn't. Did this case go to the Ninth Circuit mediation program? It did, but it was unable to be resolved. We wouldn't be here if it was successful. I just didn't know if it had been there or not. We had initial discussions, but we didn't actually go through a mediation. Thank you very much. The case of Tellus v. Alaska is submitted.
judges: Hug, Thompson, McKeown